

Signed/Docketed
September 9, 2010

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-18171-MER |
| THEODORE JOSEPH WING and ) | |
| JOANNE WING ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

THIS MATTER comes before the Court on the Chapter 13 Trustee's Objection to Confirmation of the Plan. After consideration of all the pleadings and evidence presented in this matter, as well as the relevant case law, the Court rules as follows:

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), as it concerns confirmation of the Debtors' Chapter 13 plan.

## BACKGROUND FACTS

Theodore Joseph Wing and Joanne Wing (the "Debtors") filed their voluntary petition under Chapter 13 on April 9, 2010. The Debtors have two daughters, ages sixteen and eighteen. Debtors are both employed, and their Form 22C indicates they have a current monthly income of $8,312.30. The Form 22C also indicates, pursuant to 11 U.S.C. § 1325(b)(4)(A)(ii)(II),[1] they are "above median income" in Colorado for a four-person household. Because the Debtors are "above median income," § 1325(b)(3)(B) requires certain monthly expenses, as specified in § 707(b)(2)(A) and (B), to be subtracted from their income. Any remaining amount is "disposable income." Based on their income and deductions, as set forth in Form 22C, the Debtors' monthly disposable income is negative (- $2,625.55).

The Debtors propose a 36-month plan in which they are to make payments of $200 per month, or $7,200 over the course of the plan, to be distributed as follows: $3,300 for attorney's fees; $1,000 to cure a default on their first mortgage; $2,180 for unsecured creditors; and $720

---

[1] Unless otherwise noted in the text, statutory references are to Title 11 of the United States Code.

for administrative expenses.[2] The plan would not pay all unsecured creditors in full.[3] On May 20, 2010, the Trustee filed an Objection in which she opposed confirmation, arguing the Debtors are above the applicable median income and therefore need to amend their plan to extend the plan to 60 months pursuant to § 1325(b)(4).[4]

## DISCUSSION

The key provisions for the confirmation of a proposed Chapter 13 plan are §§ 1322 and 1325. The required contents of a Chapter 13 plan are set forth in § 1322.[5] In turn, § 1325(b), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), sets forth requirements for confirmation of a Chapter 13 plan.[6]

---

[2] The plan was predicated, in part, upon the Court's stripping of the Debtors' second mortgage lien. Specifically, when the Debtors submitted the plan, they also filed a "Verified Motion for Determination of Secured Status Pursuant to 11 U.S.C. Section 506" in which they sought to strip the second mortgage lien from their primary residence on the ground it was wholly unsecured. The Court granted the motion on June 8, 2010. Thus, the Debtors' monthly mortgage expense has been reduced from the $4,44.70 per month shown on Form 22C to $3,406, as reflected in the original Schedule J.

[3] The $84,455 debt for the second mortgage, which is listed on Schedule D, is now treated as unsecured debt pursuant to § 506. Adding this amount to the $41,157 in other unsecured debt listed on Schedule F results in unsecured debt totaling $125,612.

[4] The Trustee also objected on the ground the plan was not proposed in good faith under § 1325(a)(3) because the Debtors' monthly mortgage payment of $4,470.87 is $2,950.87 above the IRS standard. For unspecified reasons, the Trustee subsequently withdrew this good faith objection.

[5] Section 1322 provides, in relevant part:

(d)(1) If the current monthly income of the debtor and the debtor's spouse when combined, when multiplied by 12, is not less than–

> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4,
>
> the plan may not provide for payments over a period that is longer than 5 years.

[6] Section 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in

As the Eleventh Circuit Court of Appeals has noted:

> The primary change to Chapter 13 bankruptcy created by BAPCPA was the creation of two classifications of debtors, above median income debtors and below median income debtors. BAPCPA then distinguished above and below median income debtors on the basis of: the length of their "applicable commitment periods," § 1325(b)(4);[7] the calculation of disposable income, § 1325(b)(3); and the determination of the maximum bankruptcy period, § 1322(d).[8]

This case calls upon the Court to evaluate the meaning of § 1325(b). Specifically, is an "above-median" debtor with negative or no disposable income required to propose a 5-year plan under § 1325(b), or does that subsection merely set forth a multiplier that determines the amount a debtor is required to pay in order to receive a discharge?

---

the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

[7] The key issue in the within dispute relates to the language of § 1325(b)(4) which defines "applicable commitment period" as follows:

(4) For purposes of this subsection, the "applicable commitment period"–

(A) subject to subparagraph (B), shall be –

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

[8] *In re Tennyson*, 611 F.3d 873, 875 n.1 (11th Cir. 2010).

### A.   "Multiplier" or "Monetary" View.

Since the enactment of BAPCPA, several courts have considered this issue. One school of thought – the view to which the Debtors subscribe – holds subsection (b)(1)(B) provides a formula, or multiplier, for determining the monetary obligation of a debtor to unsecured creditors during the applicable commitment period ("ACP"). Adherents to this "multiplier" or "monetary" view contend the subsection determines the amount of a debtor's payment – not a rigid payment period. According to proponents of the multiplier view, under the § 1325(b)(1)(B) formula, a debtor's projected disposable income ("PDI") is multiplied by ACP to determine the amount a debtor must contribute toward repayment. Where, as in this case, Form 22C shows negative or no disposable income, unsecured creditors will not recover on any of their unsecured claims, regardless of the length of the ACP, because $0 x ACP = $0. Because the length of the ACP is inconsequential, above-median-income debtors are free to enter bankruptcy plans lasting less than five years, even though their unsecured debts will not be paid in full, if their plan provides for payment to their other creditors.

The Honorable Elizabeth E. Brown of this District adopted the multiplier view in *In re Williams*.[9] Judge Brown explained:

> While the term ACP viewed in isolation may be ambiguous, it is clarified by the remainder of the statutory scheme, where the term's function and relationship demonstrate that it is to serve as part of a formula.
>
> In considering the overall Chapter 13 statutory scheme, it bears noting that ACP only exists in relationship to PDI. If Congress intended ACP to set the minimum term of a plan, the Court would have expected it to have appeared in a statute that is applicable to all Chapter 13 cases. Instead it only appears in § 1325(b). This subsection is only applicable when a trustee or unsecured creditor objects to confirmation, when there are unsecured creditors, and when a debtor has PDI. Conversely, if there are no unsecured creditors, there is no obligation to pay PDI over the ACP. If there is no PDI, there is no triggering of the ACP requirement. . . . ACP is "exclusively linked to § 1325(b)(1)(B) and the 'projected disposable income' calculation." So, if a debtor is required to pay additional funds to satisfy the best interest of creditors test or for other reasons, those additional contributions do not have to be paid out over the ACP. . . . Thus, the statutory placement of the ACP requirement, found only in § 1325(b), supports the monetary interpretation.[10]

Judge Brown held:

> [T]he ACP requirement in § 1325(b)(4) functions as a multiplier in a formula to determine the amount a debtor must contribute toward repayment of unsecured

---

[9] *In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008).

[10] *Id.* at 566-567 (internal citations omitted).

creditors, rather than imposing a rigid plan length. But because the Keller and Williams Debtors have negative disposable income on their Form 22C, it does not matter whether they have multiplied their PDI by 60 or some lesser number.[11]

Thus, under the multiplier view, § 1325(b)(1)(B) is relevant only when a debtor has projected disposable income and creditors to be paid.[12] "If there are no unsecured creditors, § 1325(b)(1)(B) is rendered obsolete. Similarly, if there is no projected disposable income to be received, the statute has no more meaning than if there were no creditors to be paid."[13] Because a debtor who has no projected disposable income is not required to make any payments to unsecured creditors, there is no reason to extend the debtor's plan artificially to 60 months.[14]

**B.      "Temporal" View.**

The Trustee, on the other hand, subscribes to a school of thought known as the "temporal" view. Adherents to this view interpret § 1325(b)(4) to provide a fixed three-year term for below-median-income debtors (§ 1325(b)(4)(A)(i)), and a fixed five-year term for above-median-income debtors (§ 1325(b)(4)(A)(ii)). Those with the temporal view of § 1325(b) hold the term of a chapter 13 plan can be shortened only if all unsecured debts are paid in full in the shorter time period.[15]

In a recent decision interpreting § 1325(b), the Eleventh Circuit Court of Appeals applied traditional standards of statutory construction to conclude § 1325(b)(4) should be read to define the duration of a chapter 13 debtor's plan.[16] The Court reasoned:

> "[A]pplicable" and "commitment" are modifiers of the noun, the core substance of the term, "period." The plain meaning of "period" denotes a period of time or duration. Merriam Webster's Collegiate Dictionary 864 (10th ed.1996). "Applicable commitment period" at its simplest is a term that relates to a certain duration, and based on its presence in § 1325, it is a duration relevant to Chapter 13 bankruptcy. The modifier "commitment" then reveals that "applicable commitment period" is a duration to which the debtor is obligated to serve. *See* Merriam Webster's Collegiate Dictionary 231 (10th ed.1996). Finally, the meaning of "applicable" reflects the fact that there are alternate "commitment periods" depending on the debtor's classification as an above median income debtor or a below median income debtor.

---

[11] *Williams*, 394 B.R. at 573.

[12] *In re Green*, 2007 WL 4026511, *3 (Bankr. N.D.N.Y. Aug. 29, 2007).

[13] *Id*.at *3.

[14] *In re Brady*, 361 B.R. 765, 777 (Bankr. D. N.J. 2007).

[15] § 1325(b)(4)(B).

[16] *Tennyson*, 611 F.3d 873.

> Section 1325(b)(4) clearly says that the "applicable commitment period" shall be five years for an above median income debtor . . . "The word 'shall' is ordinarily the language of command. . . . The use of the word "shall" "normally creates an obligation impervious to judicial discretion. . . . the plain reading of § 1325(b)(4) indicates that an above median income debtor . . . is obligated to form a bankruptcy plan with an "applicable commitment period" of no less than five years, unless his unsecured debts are paid in full.
>
> The text of § 1325(b)(4) is clear, unambiguous, and does not result in any absurd consequences. The "applicable commitment period" shall be five years. The subsection does not state that the "applicable commitment period" exists solely for the § 1325(b)(1)(B) calculation and it certainly does not state that the "applicable commitment period" becomes inconsequential if disposable income is negative.[17]

The Court continued:

> At first glance, it may seem as though § 1322(d) is superfluous since both the minimum and maximum plan duration for an above median income debtor is five years. However, § 1325(b)(4) sets the minimum period for Chapter 13 bankruptcy for an above median debtor at five years with the caveat that the plan may be shorter if all allowed unsecured claims are paid. Section 1322(d), however, sets the absolute maximum time period of a Chapter 13 bankruptcy plan for an above median income debtor at five years, no exceptions. Thus, it is clear that both § 1322(d) and § 1325(b)(4) are necessary to determine the proper time period that an above median income debtor must stay in Chapter 13 bankruptcy.
>
> However, if we were to interpret "applicable commitment period" . . . as a multiplier that exists only for § 1325(b)(1), then § 1325(b)(4)(B) would be rendered meaningless and superfluous. Section 1325(b)(1)(A) already provides that the [sic] neither the trustee nor the unsecured creditors may object to the bankruptcy plan if unsecured claims are paid in full. Thus, § 1325(b)(4)(B)'s explicit allowance for a shorter "applicable commitment period," when unsecured claims are paid in full, is only necessary if the "applicable commitment period" has a function independent of § 1325(b)(1). This explicit exception is further evidence that Congress intended the "applicable commitment period" to be a temporal requirement independent of § 1325(b)(1).[18]

---

[17] *Tennyson*, 611 F.3d at 877 (internal citations omitted).

[18] *Id.* at 878 (citation omitted).

On this basis, the Court concluded "applicable commitment period" is a temporal requirement independent of the § 1325(b)(1)(B) calculation.[19]

The Eighth Circuit Court of Appeals also addressed the issue of "whether an above-median Chapter 13 debtor's plan must extend for five years, *i.e.*, the length of the 'applicable commitment period,' or whether a bankruptcy court can confirm a shorter plan period when the debtor has a negative 'disposable income' as defined in § 1325(b)(2) and calculated on Form 22C."[20] In *Frederickson*, the debtor's Form 22C showed negative disposable income.[21] According to his Schedules I and J, however, he had monthly net income of $606.[22] He proposed to pay $600 per month for 48 months, or four years.[23] The Trustee objected to the shorter plan duration.[24]

In considering the meaning of § 1325(b)(1)(B), the Eighth Circuit concluded the "monetary multiplier" interpretation of that section is incompatible with the overarching purpose of BAPCPA and congressional intent. Specifically, the Court found

> The resulting outcome of this interpretation is that an above-median debtor who has more actual income than actual expenses, after taking into consideration payment to secured creditors, can have his proposed plan approved without making any payments to unsecured creditors and can close out his plan in a matter of months rather than staying in the system for the full "applicable commitment period" of sixty months. . . . This result does not comport with the clear congressional intent of

---

[19] *See also In re Wirth*, No. 09-12428-13, 2010 WL 2639873 (Bankr. D. Wis. Jun. 28, 2010) ("[T]he language of § 1325(b)(1) seems more conducive to the 'temporal' reading, and the language of § 1325(b)(4)(B) is actually consistent with this perspective. Specifically, it provides that the applicable commitment period "may be less than 3 or 5 years . . . but only if the plan provides for payment in full of all allowed unsecured claims *over a shorter period*.' Much of this provision would be surplusage if § 1325(b)(1) imposed no temporal requirement . . . . There is a conceptual problem with the interplay of § 1325(b)(4)(B) and § 1322(d) only if one assumes that Congress did not intentionally draft § 1325(b)(1) to mandate that in the event of an objection, the debtors would be required to perform, as it were, 'to the max.' That is certainly a logical reading of the statute, and one that seems consistent with Congressional intent . . . . This conclusion does not render § 1322(d) meaningless, as those requirements apply to all proposed plans and to the treatment of all claims, including secured or priority claims which a debtor might otherwise attempt to pay over more than five years but for the cap on plan length found in the statute.") (emphasis in original, internal citation and footnote omitted).

[20] *In re Frederickson*, 545 F.3d 652, 654 (8th Cir. 2008).

[21] *Id.* at 654.

[22] *Id.* at 654.

[23] *Id.* at 654.

[24] *Id.* at 654-55.

Page 7 of 12

BAPCPA, which was enacted "'to ensure that debtors repay creditors the maximum they can afford.'"[25]

The Honorable A. Bruce Campbell of this District has subscribed to the temporal view of § 1325(b) in *In re Brown*.[26] In that case, the Browns argued because their disposable income on Form 22C was a negative number, they were required to pay only $0 x 60 months, or $0. They concluded because they were able to pay $0 in a shorter time period than 60 months, they should be allowed to confirm a plan that proposed a monthly payment of $960.00 (net income based on Schedules I and J) for 42 months. Consistent with the Trustee's position in this case, the Trustee argued the Browns must propose a 60-month plan or pay all unsecured claims in full.

Judge Campbell held:

The clear language of the statute compels this Court to conclude that the "applicable commitment period," whether 3 or 5 years, is a fixed time period which a plan must span, regardless of the amount of "projected disposable income." Only if a plan proposes to pay allowed unsecured creditors in full, may debtors propose a shorter period of time.

The intent of BAPCPA was to require debtors who could pay their creditors something, to be "committed" to repayment for a fixed period of time, whether 3 or 5 years. It is the price, according to Congress, that debtors must pay to obtain a discharge. The above median income debtor is "committed" to the longer period of time, 5 years, before being able to receive a discharge. The language of section 1325(b)(4)(B) is explicit that the applicable commitment period, whether 3 or 5 years, "may be less than 3 or 5 years, whichever is applicable ... but *only* if the plan provides for payment in full of all allowed unsecured claims over a shorter period." (Emphasis added). Thus, a debtor's only "key to the cell" and commuting his 3 or 5 year commitment is 100% repayment.[27]

Judge Campbell therefore denied confirmation of the Browns' plan.[28]

---

[25] *Frederickson*, 545 F.3d at 657 (citations and footnote omitted). *See also In re Fridley*, 380 B.R. 538 (9th Cir. BAP 2007) (holding "applicable commitment period" operates as a temporal requirement).

[26] *In re Brown*, 396 B.R. 551 (Bankr. D. Colo. 2008).

[27] *Id.* at 554-555 (emphasis in original).

[28] *Id.*

**C. Section 1325(b) Establishes Both the Duration of a Chapter 13 Plan and the Amount that a Debtor is Required to Repay Under Such Plan.**

Having considered both parties' arguments and reviewed related case law, the Court concludes § 1325(b)(1) sets forth a multiplier determining the amount of PDI a debtor must pay into a Chapter 13 plan, while § 1325(b)(4) establishes the duration of a debtor's Chapter 13 plan.

Section 1325(b)(4) clearly defines the length of the "applicable commitment period" for a Chapter 13 debtor. The length (in months) of the ACP depends upon whether a debtor's income is "less" than the median income for his state, as defined in subsection (b)(4)(A)(ii). If a debtor's income is above the state median income, then subsection (b)(4)(A)(ii) mandates the length of his ACP "shall be . . . not less than 5 years."[29] If it is at or below the state median income, then ACP "shall be . . . 3 years."[30] In both cases, however, subsection (b)(4)(B) allows the length of the ACP to be shortened to "less than 3 or 5 years, whichever is applicable . . . but *only if* the plan provides for payment in full of allowed unsecured claims over a shorter period."[31] As the Eleventh Circuit observed, "'applicable commitment period' has a function independent of § 1325(b)(1)"[32] – in other words, ACP is determined by subsection (b)(4) without reference to the amount of PDI a debtor is required to commit to a plan.

Section 1325(b)(1)(B), in contrast, sets forth a multiplier to be used to determine the amount of money a debtor must pay over the course of the ACP. Unlike the ACP, this amount *does* depend on a debtor's PDI.[33] A debtor with negative or no PDI, as here, can never propose a plan lasting less than the three or five years required by § 1325(b)(4)(A), because, by definition, he will never be able to "provide for payment in full of all allowed unsecured claims over a shorter period"[34] as is required by § 1325(b)(4)(B) to permit a plan term of shorter duration.

The Court respectfully disagrees with those adherents of the multiplier view who argue requiring a 60-month term of payment for those above-median-income debtors with no PDI places an artificial burden upon such debtors. To the contrary, requiring plan duration of five years serves the congressional purpose of "ensur[ing] that debtors repay creditors the maximum

---

[29] § 1325(b)(4)(A)(ii).

[30] § 1325(b)(4)(A)( i).

[31] § 1325(b)(4)(B) (emphasis added).

[32] *Tennyson*, 2010 WL 2793941 at *4.

[33] *See* § 1325(b)(1)(B) (requiring a plan to provide "that all of the debtor's projected disposable income to be received in the applicable commitment period . . . be applied to make payments to unsecured creditors"). *See also Brady*, 361 B.R. at 776 (holding § 1325(b)(1)(B) can only be read to mean that if debtors have PDI to be received during the ACP, then debtors must apply PDI to unsecured creditors under plan).

[34] § 1325(b)(4)(B).

they can afford"[35] by requiring a debtor who has completed payments to his secured creditors to remain responsible to unsecured creditors for the remainder of the ACP.[36] If a debtor is able to complete payments to secured creditors in a shortened period, thereafter his PDI should increase such that he can direct more of his income to make payments to unsecured creditors consistent with § 1325(b)(1)(B). Interpreting the section as the Debtors propose, on the other hand, would allow debtors whose income increases during the plan period to avoid modifying their plans to make payments they can afford to unsecured creditors.[37] This interpretation is inconsistent with the purpose of BAPCPA.

### D.    Supreme Court Precedent Supports a Temporal Interpretation.

In addition to the foregoing reasons for finding that § 1325(b) has both a temporal and multiplier component, the Court is persuaded by the Eleventh Circuit's conclusion the Supreme Court's ruling in *Hamilton v. Lanning*[38] supports a temporal interpretation of "applicable commitment period."[39] In *Tennyson*, the Eleventh Circuit noted:

> The Supreme Court recently ruled in *Hamilton v. Lanning*, 560 U.S. ___, 130 S.Ct. 2464, ___, ___ L.Ed.2d ___, at 18 (2010), that while the mechanical approach of calculating projected disposable income directly as a derivative of disposable income is the proper starting point, bankruptcy courts "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning* does not directly comment on the definition of "applicable commitment period" but what it does indicate is that § 1325(b) is not a strict mechanical formula existing in a vacuum.
>
> *Lanning* opens the door for the possibility that the final projected disposable income accepted by the bankruptcy court may not be the result of a strict § 1325(b)(1)(B) calculation. The "applicable commitment period" must have an existence independent of the § 1325(b)(1)(B) calculation. If "applicable commitment period" were left dependent upon projected disposable income, as Tennyson recommends, then it would necessarily be dependent on the multitude of indeterminate factors that *Lanning* has allowed to be used in the determination of projected disposable income. This in turn would leave "applicable commitment period" an indeterminate term. In order for "applicable commitment period" to have any definite meaning, its

---

[35] H.R. Rep. 109-31(I), p.2, 2005 U.S.C.C.A.N. 88, 89.

[36] *Frederickson*, 545 F.3d at 657.

[37] *See Tennyson*, 611 F.3d at 879.

[38] *Hamilton v. Lanning*, 560 U.S. __, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

[39] *Id. at* 878-79.

definition must be that of a temporal term derived from § 1325(b)(4) and independent of § 1325(b)(1).[40]

Indeed, this case is a clear example of a situation where the mechanical approach to calculating PDI would render "applicable commitment period" an "indeterminate term" were Debtors' interpretation of § 1325(b) to prevail.[41] The *Lanning* Court stated:

> Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.[42]

Here, the Debtors' expenses, as shown on Schedule J, are substantially less than the expenses set forth in their Form 22C. This is due, in part, to the fact the Debtor's expenses have been modified due to the stripping of the second mortgage lien from their primary residence pursuant to § 506. Having now stripped the second mortgage lien, Schedule J reflects that the Debtors' current mortgage payment is currently a total of $3,406.44 per month – $1,027.44 less than the amount previously paid to secured creditors. As a result of this substantial change in the Debtors' expenses, *Lanning* directs that PDI is not to be determined solely by the calculation on the Debtors' Form 22C. Instead, the Court may take into consideration the Debtors' reasonable expenses on Schedule J and income on Schedule I.

The Debtors' Schedule I shows income in the amount of $6,609.16 per month, and Schedule J shows expenses of $6,409 per month,[43] resulting in monthly net income of $200.16. Plugging this figure into the formula set forth in § 1325(b)(1), over a 60-month ACP, results in a required repayment of $12,009.60 to unsecured creditors – not the $0 permitted by the "multiplier" approach. Thus, the Debtors' plan is unconfirmable because it does not devote all of their PDI to payment of unsecured creditors as required by § 1325(b)(1)(B).

---

[40] *Id.* at 878-79.

[41] It is important to note the Trustee did not object to confirmation of the plan on the ground Debtors miscalculated PDI. Indeed, the Trustee's counsel stated at the hearing she did not contest Debtors' contention that they had negative PDI. Nonetheless, as Judge Brown recognized in *Williams*, "[O]nce either a trustee or an unsecured creditor lodges an objection to confirmation, *on any basis*, then [a] Court may not confirm it unless it satisfies the requirements of § 1325(b)." *Williams*, 394 B.R. at 562 (emphasis in original). In other words, whenever a Trustee or creditor makes any objection to confirmation, that objection "requires the Court to ensure that all of § 1325(b)'s requirements are met, including the requirement that PDI must be paid 'to unsecured creditors.'" *Id.*

[42] *Lanning*, 130 S.Ct. at 2478.

[43] For purposes of this calculation, the Court assumes, but does not decide, that the Debtors' expenses as set forth in Schedule J are "reasonably necessary to be expended" as determined by paragraphs (A) and (B) of § 707(b)(2). *See* § 1325(b)(3).

## CONCLUSION

The Debtors are required, pursuant to § 1325(b)(4), to provide for a five-year applicable commitment period in order for their Chapter 13 plan to be confirmed pursuant to § 1325(b)(1). As the Debtors' current plan calls for a 36-month applicable commitment period, it may not be confirmed. Accordingly,

IT IS ORDERED the Debtors' request for confirmation of their Chapter 13 plan is DENIED. The Court will issue a separate order setting forth a deadline to file a new Chapter 13 plan.

Dated September 9, 2010

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge